1 | SANG BANH (SBN 227831)
sbanh@icls.org
2 | AMANDA STEWART (SBN 235890)
astewart@icls.org
3 | INLAND COUNTIES LEGAL SERVICES
10565 Civic Center Drive, Suite 200
4 | Rancho Cucamonga, CA  91730
Telephone: (951) 248-4724
5 | Fax: (909) 980-4871

6 | RICHARD A. ROTHSCHILD (SBN 67356)
rrothschild@wclp.org
7 | NAVNEET K. GREWAL (SBN 251930)
ngrewal@wclp.org
8 | WESTERN CENTER ON LAW AND POVERTY
3701 Wilshire Boulevard, Suite 208
9 | Los Angeles, CA 90010
Telephone: (213) 487-7211
10 | Fax: (213) 487-0242

11 | AMY P. LALLY (SBN 198555)
alally@sidley.com
12 | ALEX DOHERTY (SBN 261552)
adoherty@sidley.com
13 | Sidley Austin LLP
555 West Fifth Street, Suite 4000
14 | Los Angeles, California  90013-1010
Telephone: (213) 896-6000
15 | Fax: (213) 896-6600

16 | Attorneys For Plaintiffs
REBECCA JONES and BRENT PALMER
17 | (*Additional Counsel Listed on Signature Page*)

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA JONES and BRENT PALMER,<br><br>         Plaintiffs,<br><br>    v.<br><br>UPLAND HOUSING AUTHORITY; DON SWIFT, Executive Director of the HOUSING AUTHORITY OF THE CITY OF UPLAND in his official capacity,<br><br>         Defendants. | Case No.: EDCV 12-2074 VAP (OPx)<br><br>*Assigned for all purposes to the Honorable Virginia A. Phillips*<br><br>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

LA1 2645486v.1

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## **TABLE OF CONTENTS**

Page

I.  Introduction ...............................................................................................1

II. The Risk of Homelessness is an Irreparable Harm. ..........................................2

III. Defendants' inadequate procedures violate federal regulations and plaintiffs' due process rights ...................................................................................4

IV. Issuing an injunction will not burden UHA or other parties. ..........................6

V.  Defendants do not raise any valid basis for denying Mr. Palmer admission to the Section 8 rental assistance program. .....................................7

VI. Ms. Jones was improperly denied a Section 8 Voucher................................9

VII. Conclusion ................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Air Line Pilots Ass'n, Intern. v. Alaska Airlines, Inc.*,
   898 F.2d 1393 (9th Cir. 1990) .................................................................... 12

*Baldwin v. Hous. Auth. of the City of Camden*,
   278 F. Supp. 2d 365 (D.N.J. 2003) ............................................................... 6

*Basco v. Machin*,
   514 F.3d 1177 (11th Cir. 2008) .................................................................. 12

*Hendrix v. Seattle Housing Authority*,
   No. C07-657, 2007 WL 2790783 (W.D. Wash. Sept. 25, 2007) ................. 2

*Marlyn v. Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*,
   571 F.3d 873 (9th Cir. 2009) ........................................................................ 2

*McNair v. New York City Hous. Auth.*,
   613 F. Supp. 910 (S.D.N.Y. 1985) ............................................................... 8

*Mitchell v. United States Dep't of Housing & Urban Development*,
   569 F. Supp. 701 (N.D. Cal. 1983) ............................................................... 3

*Moore v. Miller*,
   579 F. Supp. 1188 (N.D. Ill. 1983) ............................................................... 4

*Nelson v. Board of Supervisors*,
   190 Cal. App. 3d 25 (1987) ........................................................................ 10

*Perkins-Bey v. Housing Authority of St. Louis County*,
   No. 4:11CV310, 2011 WL 939292 (E.D. Mo. Mar. 4, 2011) ...................... 7

*Ressler v. Pierce,*
   692 F.2d 1212 (9th Cir. 1982) ...................................................................... 6

*Solomon v. Hous. Auth. of City of Pittsburgh*,
   2:06CV1155, 2006 WL 6666739 (W.D. Pa. Sept. 18, 2006) ....................... 2

*Woods v. Willis,*
   825 F. Supp. 2d 893 (N.D. Ohio 2011) ...................................................... 11

**STATUTES**

42 U.S.C. § 1437a(b)(3) ............................................................................................. 8

Cal. Gov't Code § 244 .............................................................................................. 10

**OTHER AUTHORITIES**

7 C.F.R. § 273.2(f)(1)(vi) .......................................................................................... 10

24 C.F.R. § 5.403 ........................................................................................................ 8

24 C.F.R. § 982.54(d)(4)(i) ......................................................................................... 8

24 C.F.R. § 982.552(c)(1)(iii) ..................................................................................... 8

24 C.F.R. § 982.552(c)(1)(vii) .................................................................................... 9

24 C.F.R. § 982.552(c)(2) ........................................................................................... 9

24 C.F.R. § 982.554(a) ................................................................................................ 8

## I. Introduction

Defendants cannot validly argue that they provided Plaintiffs Brent Palmer and Rebecca Jones an opportunity to tell their side of the story in denying them desperately needed housing assistance. The undisputed evidence shows: 1) each plaintiff was informed that he or she had 15 days to "request an informal review"; 2) each plaintiff timely requested that review; and 3) the next thing each plaintiff heard was that defendants had reached a final adverse decision without plaintiffs' participation.

No prosecutor in this country would say to a judge, "no need to hear from the defendant, Your Honor. Our office thoroughly investigated this case and has determined he's guilty." But that is what the UHA and its director have done. They have acted as prosecutor, judge, and jury to deny plaintiffs an opportunity to keep a roof over their heads, without allowing a defense. This violates federal regulations and elementary principles of due process. The Court should issue the preliminary relief requested to prevent further harm to plaintiffs caused by these illegal actions.

In response to plaintiffs' claim that they would have shown their eligibility at informal review, defendants now assert new and never previously noticed reasons to deny Mr. Palmer, and question the veracity of Ms. Jones' claim of residency in Upland. Opposition to Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 19) at 12-13. Both responses illustrate plaintiffs' probability of success on the merits by highlighting the need for meaningful review. Such due process necessarily includes notice of the reasons for denial, and an opportunity to present and confront evidence.

Defendants' newly asserted grounds for denying Mr. Palmer a voucher were not noticed to him, which in itself is a ground for reversing the adverse action. But however defendants characterize their actions, they seek to deny benefits to a single disabled applicant because of a debt incurred by his mother while he was a minor. Defendants' attempt is time-barred and contrary to federal law. Dkt. No. 19 at 13.

Defendants dispute facts regarding where Ms. Jones lived and when, but the

totality of the facts show she is eligible for a residency preference. Defendants have failed to show that Ms. Jones lived anywhere but Upland at all relevant times and she presented to UHA documents proving that she did. That her evidence is not more elaborate stems from the reality – recognized by other housing authorities and case law – that people living in their cars are not in the best position to document every aspect of their lives. Defendants have no basis to deny Ms. Jones admission to the Section 8 rental assistance program.

## II.     The Risk of Homelessness is an Irreparable Harm.

Defendants assert two theories that plaintiffs have shown no irreparable injury : 1) that plaintiffs' "impecunious condition existed and continues to exist because of circumstances unrelated to their [Section 8] benefits" and 2) because plaintiffs could be adequately compensated monetarily for any harm that might occur. Dkt. No. 19 at 7-8.  Defendants misread the standard for granting mandatory injunctive relief and declare that relief should be granted only where the resulting harm is serious **and** not capable of compensation in damages. Dkt. No. 19 at 3. In reality, the case cited by defendants states that the harm must either result in very serious damage **or** the harm must be incapable of redress through money damages. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citing *Anderson v. United States*, 612 F.2d 1112, 1114 (9th Cir. 1980)). The real prospect of homelessness is precisely the type of harm that results in serious damage and is incapable of being redressed through money damages. *See Solomon v. Hous. Auth. of City of Pittsburgh*, 2:06CV1155, 2006 WL 6666739 (W.D. Pa. Sept. 18, 2006) (granting temporary restraining order and ordering housing authority to place applicant back at her prior position on the waitlist where it denied voucher application for a time-barred debt); *Hendrix v. Seattle Housing Authority*, No. C07-657, 2007 WL 2790783, at *8 (W.D. Wash. Sept. 25, 2007) ("The Court has no difficulty in making a finding of the possibility of irreparable injury if Plaintiff is unconstitutionally deprived of her benefits under Section 8….The injury at risk here - loss of a place to

live - is not an injury that can be redressed by monetary damages after the fact.").

The ongoing denial of plaintiffs' application for Section 8 rental assistance has put plaintiffs at imminent risk of homelessness. In granting a preliminary injunction, the court in *Mitchell v. United States Dep't of Housing & Urban Development*, 569 F. Supp. 701, 705 (N.D. Cal. 1983), stated: "If plaintiff[s] . . . are unable to locate housing they can afford, they would be homeless and subject to the many perils that homelessness brings." The perils of homelessness – risks to personal health and safety – are serious and cannot be compensated through money damages.

Plaintiffs would not currently be at imminent risk of homelessness if not for defendants' actions. UHA *issued* Mr. Palmer a Section 8 voucher in December 2011. *See* Declaration of Brent Palmer in Support of Plaintiffs' Motion for Preliminary Injunction ("Palmer Decl.") ¶ 11. Only when Mr. Palmer submitted a Request for Tenancy Approval did UHA check its database to see if he owed any debts to the agency. Declaration of Monique Roque in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Roque Decl.") ¶ 9. UHA then *withdrew* that voucher before he could sign the lease on a new unit, but after he had left the only stable living situation he had known as an adult. Palmer Decl. ¶¶ 12-14. Now, Mr. Palmer's belongings are confined to a trash bin as he sleeps on a couch in his grandmother's one bedroom apartment. *Id*. ¶¶ 21, 23. He has searched in vain to find an affordable place to live. *Id*. ¶ 28. Had UHA followed appropriate procedures, Mr. Palmer would be living in a unit he had already secured and utilizing Section 8 rental assistance.

Ms. Jones now spends most of her income on substandard housing. *See* Declaration of Rebecca Jones in Support of Plaintiffs' Motion for Preliminary Injunction ("Jones Decl.") ¶ 13; Supplemental Declaration of Rebecca Jones in Support of Motion for Preliminary Injunction ("Supplemental Jones Decl.") ¶ 2. While at the time plaintiffs filed the instant motion, Ms. Jones' unemployment benefits had just terminated and she had few work hours at K-mart, she now works in Upland as a Certified Nursing Assistant making $642.96 per month and pays $500

toward her monthly rent. *Id.* With a meaningful review of the denial of her application, she would have demonstrated her Upland residency and would be utilizing a voucher with which she could rent an actual apartment. If plaintiffs had been accorded all of their legal rights, they would not be facing imminent risk of homelessness.

Defendants further argue that plaintiffs' request for interim relief in the form of their first available vouchers is equivalent to monetary damages, which are available post-trial. This argument lacks merit. Plaintiffs have not requested monetary relief, but rather injunctive relief that would allow them to ultimately receive vouchers and secure housing. Upon prevailing, they will not be compensated for their interim harm. Even if plaintiffs requested damages, homelessness causes dire threats to individual health and safety and "[a] subsequent payment . . . cannot adequately compensate . . . for being required to subsist for a period in a manner incompatible with health and well-being." *Moore v. Miller*, 579 F. Supp. 1188, 1192 (N.D. Ill. 1983).

### III. Defendants' inadequate procedures violate federal regulations and plaintiffs' due process rights

Defendants' Opposition fails to address the central problem in this case – Brent Palmer and Rebecca Jones waited years for an opportunity to obtain Section 8 rental assistance, *see* Palmer Decl. ¶ 10; Jones Decl. ¶ 14, and both were denied with no chance to tell their side of the story. Had a meaningful review been conducted, they would currently be participants in UHA's Section 8 rental assistance program.

Defendants claim they "scrupulously followed the prescribed procedure" in denying plaintiffs' applications for the Section 8 program. Dkt. No 19 at 1. Yet, the steps they admit to taking fall short of regulatory requirements and basic notions of due process, demonstrating that UHA's process for reviewing denials of admission is inadequate.

The notices sent to Mr. Palmer and Ms. Jones stated: "if you believe this determination was made incorrectly, you may request an informal review. Your

1  request must be submitted in writing within fifteen (15) days of the date of this letter."
2  Palmer Decl. ¶ 14 & Ex. 1; Jones Decl. ¶ 22 & Ex. 10. Defendants claim that this
3  statement "was an open invitation to plaintiffs to submit whatever objections they may
4  have had." Dkt. No. 19 at 11. On the contrary, the notice was an "open invitation" to
5  do exactly what it stated: ask for an informal review. Both plaintiffs, within 15 days,
6  asked for that review. Palmer Decl. ¶ 15; Jones Decl. ¶ 23. At that point, each plaintiff
7  could reasonably expect that UHA would schedule an informal proceeding at which
8  he would be given an opportunity to present objections and confront adverse evidence.
9  Yet, after plaintiffs submitted their requests, they heard nothing from UHA prior to a
10 final decision. Palmer Decl. ¶ 16; Jones Decl. ¶ 24.

11     Instead, defendants admit, after plaintiffs requested an informal review,
12 Executive Director Don Swift only looked at their existing application files and
13 provided no forum in which they could present written or oral objections before
14 issuing final denial letters. Declaration of Donald Swift in Opposition to Plaintiffs'
15 Motion for Preliminary Injunction ("Swift Decl.") ¶¶ 10-11, 13-14. This violates the
16 heart of the regulations and procedural due process. Plaintiffs will certainly prevail on
17 the merits on this basis alone.

18     In addition, as explained in the opening brief, defendants violated their
19 duty to act promptly on plaintiffs' applications. *See* Memorandum of Points and
20 Authorities in Support of Plaintiffs' Motion for Preliminary Injunction (Dkt. No. 8-2)
21 at 8-9. UHA claims that its investigation of Plaintiffs' applications for admission
22 necessitated over four month delays in sending out denial notices. Dkt. No. 19 at 10.
23 Yet, three UHA employees state that they completed their investigation four months
24 before a notice of denial was sent to Mr. Palmer. Swift Decl. at ¶ 8; Declaration of
25 Sylvia Magdaleno in Opposition to Plaintiffs' Motion for Preliminary Injunction
26 ("Magdaleno Decl.") ¶ 7; Roque Decl. ¶ 9. In Ms. Jones' case, UHA waited
27 approximately three months to set up a meeting with a witness to whom it had full
28 access. Magdaleno Decl. ¶ 23. This fits no definition of "prompt."

LA1 2645486v.1

5
**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Defendants attempt to distinguish *Ressler v. Pierce,* 692 F.2d 1212 (9th Cir. 1982), by suggesting that all it stands for is the right to apply for Section 8. Dkt. No. 19 at 11-12. Defendants claim that plaintiffs' opportunity to present evidence during eligibility interviews satisfies UHA obligations. In fact, the court held that an applicant to the Section 8 program has a right to procedural due process during the waiting list, tenant selection, *and* review process. *Ressler*, 692 F.2d at 1216-1222. The court ruled that applicants should be given notice of acceptance or denial within 15 days of application and that the notice include a specific statement of reasons for denial as well as addresses of local legal aid organizations. *Id.* at 1221. Further, where private owners provided the review, "'the importance of the applicant's interest and the increased risk of an erroneous eligibility determination by a private project owner require[d] [additional] review by an impartial HUD employee." *Id.* at 1222. *Ressler* is explicit – applicants for the Section 8 program have a right to procedural due process including the right to a review of <u>denial</u>. *Id.* A post-denial "hearing which fails in every way to afford an aggrieved party any meaningful review does not provide an opportunity to be heard and cannot satisfy the requirements of due process." *Baldwin v. Hous. Auth. of the City of Camden*, 278 F. Supp. 2d 365, 387 (D.N.J. 2003) (concluding that the attendance of a housing authority official involved in applicant's initial denial at informal review prevented meaningful review). Plaintiffs will prevail on the merits of their due process and federal regulatory claims.

**IV.     Issuing an injunction will not burden UHA or other parties.**

Defendants argue that the Court should reject this motion for preliminary injunction on the basis that it may affect the rights of persons outside this litigation. Dkt. No. 19 at 8. Here, no other person would be burdened by the issue of an injunction.  Plaintiffs have requested injunctive relief in the form of UHA's first <u>available</u> vouchers. Because UHA is authorized to utilize 624 vouchers annually does not mean that it does. *See* Swift Decl. ¶ 3. Each year, families leave or are terminated from the Section 8 rental assistance program. If this were not the case, the waitlist for

admission would never move. An analysis by the Center on Budget Policy and Priorities found that over the course of seven years, UHA only issued all of its vouchers in one year. Supplemental Declaration of Sang Banh in Support of Motion for Preliminary Injunction ("Supplemental Banh Decl.") ¶ 3 & Ex. 9. For the most recent year data is available, 2010, UHA used 614 of the 624 vouchers available. *Id.* Therefore some vouchers are likely currently available, and if not, will become available within the course of this year.

### V. Defendants do not raise any valid basis for denying Mr. Palmer admission to the Section 8 rental assistance program.

UHA violated federal law by denying Mr. Palmer Section 8 rental assistance on the basis of a time-barred debt owed by his mother. *See* Dkt. No. 8-2 at 14-17. In their opposition, defendants do not contend that Mr. Palmer currently owes a debt to the UHA because they cannot. Instead they claim that their unambiguous use of the word "debt" in his Notice of Denial is "unfortunate" and that UHA really meant to deny Mr. Palmer on other regulatory grounds. Dkt. No. 19 at 12. This argument fails.

As an initial matter, defendants' current attempt to backtrack from the regulatory ground they previously asserted as the basis for Mr. Palmer's denial rings hollow. Defendants' own declarations use the word "debt" over a dozen times in describing why Mr. Palmer's application was denied. *See, e.g.*, Magdalena Decl., ¶ 8 ("I spoke to Mr. Palmer on the phone and informed him that I had denied his HCV benefits, because I discovered that his mother, Brenda Palmer, owed a debt to UHA…."); Swift Decl. ¶ 11 ("I confirmed that…the household's assistance was terminated in January 2007 for non-payment of a debt owed to UHA in the sum of $1,000."). Defendants' attempt to rewrite their own administrative history is flatly contradicted by their own testimony.

More importantly, UHA cannot, as a matter of law, assert one reason for denial in a notice and retroactively justify its decision by reference to other regulatory grounds for denial. *See Perkins-Bey v. Housing Authority of St. Louis County*, No.

4:11CV310, 2011 WL 939292, at *4 n.6 (E.D. Mo. Mar. 4, 2011) ("The Court acknowledges that Defendants proffer a second justification for Plaintiff's termination ….[and] agrees with Plaintiff that because such justification was not referenced in the proposed termination of rental assistance . . . it cannot provide the basis for terminating his assistance at this time."); *McNair v. New York City Hous. Auth.*, 613 F. Supp. 910, 914-15 (S.D.N.Y. 1985) (applicants to public housing are entitled to notice "advis[ing] the applicant of the basis on which she was rejected.") To hold otherwise would undermine the statutory and regulatory requirements that protect a Section 8 applicant's due process right to notice of the reason for the adverse decision and the opportunity to object to it. *See* 24 C.F.R. § 982.554(a). Defendants' premise – that it may retroactively justify its denial of Mr. Palmer's application by reference to any regulatory ground, whether notice of that ground was provided or not – ignores UHA's due process obligations.

      Even if UHA could lawfully justify its denial of Mr. Palmer's application by reference to the two regulatory grounds asserted for the first time in Defendants' opposition papers – which it cannot do – UHA's new grounds also fail. First, 24 C.F.R. § 982.552(c)(1)(iii) states that a housing authority may deny an applicant to the Section 8 rental assistance program "if a PHA has ever terminated assistance under the program for any member of the family." UHA's Administrative Plan states that the agency will deny assistance if a PHA "has ever terminated assistance under the program for any member of the family for adverse reasons." Supplemental Banh Decl. ¶ 2, Ex. 8. In the Section 8 program, "family" is a term of art referring to the applicant or participant household. *See* 42 U.S.C. § 1437a(b)(3); 24 C.F.R. § 5.403; 24 C.F.R. § 982.54(d)(4)(i). Mr. Palmer, in applying on his own for Section 8 benefits, is the only member of the applicant "family." He was never a head or co-head of household when his mother utilized a Section 8 voucher. Palmer Decl. ¶ 4. To belatedly assert that Mr. Palmer should have been denied rental assistance on this ground ignores that he was a minor at the time the purported debt was incurred by his mother, had no knowledge of

the debt until UHA denied him rental assistance, and has a disability that would have prevented him from working full-time to repay any such debt. Declaration of Brenda Palmer in Support of Plaintiffs' Motion for Preliminary Injunction ¶ 5; *see also* Palmer Decl. ¶¶ 2, 6. Not only does this mean he was not terminated for an adverse reason, but it also ignores 24 C.F.R. § 982.552(c)(2) which states that a housing authority "may consider all relevant circumstances such as the seriousness of the case, the extent of participation or culpability of individual family members, mitigating circumstances related to the disability of a family member, and the effect the denial . . . would have on other family members who were not involved in the action or failure."

Defendants' second newly asserted reason for denying Mr. Palmer Section 8 rental assistance is under 24 C.F.R. § 982.552(c)(1)(vii), which states that an applicant may be denied assistance if anyone in the family has breached an agreement to pay amounts to a PHA. UHA's Administrative Plan includes this criterion as a reason for denial. Supplemental Banh Decl. ¶ 2 & Ex. 8. Again, any action on this ground would be time-barred. Further, defendants ignore that Mr. Palmer never signed any agreement with UHA to pay any amount to the agency and cannot be in breach of an agreement he never signed. Palmer Decl. ¶ 4. So, even if UHA had properly asserted these regulatory grounds, they provide no basis for denying Mr. Palmer a voucher.

### VI. Ms. Jones was improperly denied a Section 8 Voucher

To support UHA's denial of Ms. Jones' application for Section 8 rental assistance, defendants state that Ms. Jones did not provide proof that she was an Upland resident. Dkt. No. 19 at 13-14. Defendants never provide any evidence that Ms. Jones lived anywhere other than Upland. Instead, they based the denial solely on hearsay evidence which Ms. Jones never had an opportunity to confront. Had Ms. Jones had a meaningful review of the adverse action against her application, she would have demonstrated her residency in Upland. Defendants now produce more unreliable evidence to justify their denial of Ms. Jones' application. None of its

1    evidence is persuasive.

2           At the outset, both courts and government agencies have recognized the
3    difficulty people who are homeless or living in substandard housing[1] have in
4    establishing residency. Under California law, residence in a jurisdiction consists of
5    presence in the jurisdiction and intent to remain, *see* Cal. Gov't Code § 244, a
6    universal rule which applies to homeless people. *Nelson v. Board of Supervisors*, 190
7    Cal. App. 3d 25, 30 (1987) (county could not deny General Assistance to otherwise
8    eligible recipients just because they lacked a fixed address). The Food Stamp Program
9    waives residency requirements "in unusual cases (such as homeless households . . .)
10   where verification of residency cannot reasonably be accomplished." 7 C.F.R. §
11   273.2(f)(1)(vi). Given this context, UHA's rigid denial of Ms. Jones' application for
12   Section 8 rental assistance is particularly absurd.

13          Defendants submit a declaration from Patricia Jones stating that Rebecca Jones
14   never lived with her. Declaration of Patricia Jones in Opposition to Plaintiffs' Motion
15   for Preliminary Injunction ("Patricia Jones Decl.") ¶ 7 & Ex. 2. Plaintiffs have
16   explained at length why Ms. Jones' testimony is unreliable given her self-interest in
17   preserving her voucher. Dkt. No. 8-2 at 21. Ms. Jones lived in one of the three
18   bedrooms in Patricia Jones' unit on 889 N. Laurel Ave. in Upland, where she had her
19   own microwave and cooler. Supplemental Jones Decl. ¶ 6. Her friend helped her
20   move to the unit in the Fall of 2011. Declaration of Francisco Escobedo in Support of
21   Motion for Preliminary Injunction ¶ 3. She witnessed Patricia Jones walk her three
22   children to school in the mornings. Supplemental Jones Decl. ¶ 9. She saw Patricia
23   Jones' children sell candy to neighbors. *Id*. ¶ 10. She took trash out to the bin in the
24   alley behind the complex. *Id*. ¶ 8. She even had to have a colleague drop her off at that
25   location when she had car trouble. Declaration of Jacqueline Thomas in Support of

---

[1] The San Francisco Housing Authority gives an admissions preference to the homeless and people who reside in substandard housing, which includes housing without a kitchen. Supplemental Banh Decl. ¶ 2 & Ex. 8.

Plaintiffs' Motion for Preliminary Injunction ¶ 3-4. But Patricia Jones now states that she told Rebecca Jones that she "was not permitted to have a roommate by the Upland Housing Authority from whom [she] was receiving Section 8 housing assistance." Patricia Jones Decl. ¶ 4. This testimony is unreliable: the property manager at Patricia Jones' complex observed a roommate living with Patricia Jones as recently as November 2012. Declaration of Maximino Piza in Support of Plaintiffs' Motion for Preliminary Injunction ¶¶ 1, 3, and 6.

Defendants further assert that Ms. Jones never resided at 859 N. Mountain Avenue in Upland because the property manager did not find any record of her residence in the apartment complex's database. *See* Declaration of Colette Johnson-Ross in Opposition to Plaintiffs' Motion for Preliminary Injunction ¶¶ 3. Yet Ms. Jones told UHA that she only rented a room at that unit. Magdaleno Decl. ¶ 17. Ms. Johnson-Ross admits that Ms. Jones could have lived in that 260-unit complex without her knowledge. Declaration of Colette Johnson-Ross in Support of Plaintiffs' Motion for Preliminary Injunction ¶¶ 2, 4-5. While acknowledging that Ms. Jones informed UHA that she would be leaving this location, employee Annette Gonzales testifies that she visited it on December 29, 2011 and found someone other than Ms. Jones had been living there for two weeks. Declaration of Annette Gonzalez in Opposition to Plaintiffs' Motion for Preliminary Injunction ¶¶ 2-3. This only corroborates Ms. Jones' statement that she moved. Ms. Jones did not provide a lease or utility bills because she has lived in substandard housing for years and UHA fails to take such circumstances, faced by many extremely low-income families, into consideration.

Ms. Jones' situation is precisely the type that requires meaningful review where she can directly confront evidence used against her and cross-examine the adverse witness. Where hearsay is the "sole basis for an adverse decision," not allowing the applicant to cross-examine the witness "would violate the participants' statutory and due process rights." *Woods v. Willis,* 825 F. Supp. 2d 893, 898, 902 (N.D. Ohio 2011)

(finding due process violated where participant was not allowed to confront and cross-examine witness after housing authority canceled voucher alleging that the participant committed "fraud in stating [she had] custody of [her child]" based on hearsay letter from child's father); *see Basco v. Machin*, 514 F.3d 1177, 1182 (11th Cir. 2008) (statements in police reports legally insufficient hearsay on which to base termination of Section 8 assistance).

Defendants freely admit that their final decision was based solely on a review of her existing file. Swift Decl. ¶ 13. She was denied the opportunity to confront the hearsay evidence against her and present rebuttal evidence on her behalf. The Court should grant plaintiffs' motion for preliminary injunction and order defendants to provide them with UHA's first available vouchers.[2]

## VII. Conclusion

For the foregoing reasons and reasons stated in plaintiffs' Opening Brief, the Court should enter a preliminary injunction ordering Defendants' to provide the first available vouchers to plaintiffs Palmer and Jones.[3]

---

[2] Finally, and as detailed in plaintiffs' Opening Brief, no bond should be required, as plaintiffs are indigent. Dkt. No. 8-2 at 24. Defendants make the remarkable argument that plaintiffs should be required to pay a bond they cannot afford and thus be denied preliminary relief *because* they are indigent. Dkt. No. 19 at 14. No authority for such a proposition exists.

[3] Defendants do not contest any material facts concerning their alleged violation of federal regulations and procedural due process. Nor do they contest material facts concerning Brent Palmer's eligibility for voucher assistance. However, defendants contest facts relating to Ms. Jones' eligibility for the voucher program. Should the Court be unwilling to grant the requested preliminary relief, at the very least UHA should be prohibited from continuing to deny Ms. Jones admission to the Section 8 voucher program without providing an expedited meaningful review that comports with federal regulations and due process – a review conducted by an impartial officer that allows the applicant to cross-examine the witnesses submitting hearsay evidence against her. Plaintiffs acknowledge that this may provide much of the ultimate relief requested in this case. Because defendants do not contest the facts regarding what review was granted plaintiffs, the Court may grant summary judgment in plaintiffs' favor on the basis of the evidentiary record presented in support of Plaintiffs' Motion for Preliminary Injunction. *Air Line Pilots Ass'n, Intern. v. Alaska Airlines, Inc.*, 898 F.2d 1393, 1397 n.4 (9th Cir. 1990) ("court might also convert a decision on a preliminary injunction into a final disposition of the merits by granting summary judgment on the basis of the factual record available at the preliminary injunction stage.")

| | |
|---|---|
| Dated: January 25, 2013 | Respectfully submitted, |
| | INLAND COUNTIES LEGAL SERVICES<br>Sang Banh<br>Amanda Stewart<br>Darrell K. Moore<br>Irene C. Morales |
| | WESTERN CENTER ON LAW AND POVERTY<br>Richard A. Rothschild<br>Navneet K. Grewal<br>Stephanie E. Haffner |
| | SIDLEY AUSTIN LLP<br>Amy P. Lally<br>Alex Doherty |
| | By: */s/ Navneet K. Grewal*<br>      Navneet K. Grewal<br>      Attorneys For Plaintiffs<br>      Rebecca Jones and Brent Palmer |